IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Jesse Epps, #287865 ) | |
| ) | Civil Action No.8:08-2476-TLW-BHH |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| McKither Bodison, Warden of ) | |
| Lieber Correctional Institution, ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. # 11.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on July 8, 2008.[1] On September 22, 2008, the respondent moved for summary judgment. By order filed September 23, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On December 1, 2008, the petitioner filed a response opposing the respondent's summary judgment motion.

---

[1]This date reflects that the envelope containing the petition was date stamped as received on July 8, 2008, at the Lieber Correction Institution mailroom. (Pet. Attach.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## PROCEDURAL HISTORY

The petitioner, Jesse Epps, is currently confined in the Lieber Correctional Institution. In April 2002, the Lee County Grand Jury indicted the petitioner for murder and possession of a weapon during a violent crime. (App. 366-67.) Attorney Charlie Johnson represented the petitioner. On October 9, 2002, a jury trial was held with the Honorable Thomas W. Cooper, Jr., presiding. The petitioner was found guilty as charged and Judge Cooper sentenced him to thirty years for the murder and five years for the weapon charge. (App. 368-69.) The petitioner timely filed an appeal.

Assistant Appellate Defender Robert M. Dudek represented the petitioner on appeal. On January 6, 2004, Dudek filed a a petition to be relieved as counsel and an Anders[2] brief raising the following issues  Whether the trial judge erred by refusing to charge voluntary manslaughter where there was evidence appellant and the decedent had been arguing and that the decedent backed his van, a deadly instrument, in appellant's direction, in a menacing fashion, before appellant shot him?
(App. 302.)

On March 3, 2004, the petitioner filed "Appellant's Response And Objections To Appellate Counsels Anders Brief" raising the following issues:

> 1. Was appellant denied the guaranteed protections of the federal constitution[']s fourteenth amendment due process clause when his lawyer plead[ed] him guilty without his consent?
>
> 2. Was appellant 's sixth and fourteenth amendment rights to a fair an[d] impartial jury violated when juror number 61 lied during voir dire?

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

> 3. Did the trial court lack subject matter jurisdiction to try appellant when the delay between warrant and indictment amounted to ten months?
>
> 4. Did the trial court error in admitting evidence of letters presented by co-defendant as to appellant's guilt without expert proof letters were in fact appellant's?
>
> 5. Was appellant denied due process of law in violation of his federal constitutional rights under the fourteenth amendment when the trial court refused to charge voluntary manlaughter?

On June 22, 2004, the South Carolina Court of Appeals filed an unpublished opinion, *State v. Epps*, 2004-UP-396 (S. C. Ct.App. filed June 22, 2004), dismissing the petitioner's appeal and granting counsel's request to be relieved. The South Carolina Court of Appeals sent the remittitur down on July 23, 2004. (App. 313.)

On June 16, 2005, the petitioner filed a post-conviction relief ("PCR") application raising the following issues:

> 1. Ineffective assistance of trial counsel;
>
> 2. Ineffective assistance of appellate counsel.

(App. 314-21.) On October 5, 2006, the Honorable Paula H. Thomas held an evidentiary hearing into the matter. The petitioner was present and represented by Attorney Charles T. Brooks, III. On December 11, 2006, Judge Thomas denied the petitioner relief and dismissed his PCR application with prejudice. The petitioner filed a timely notice of appeal.

Assistant Appellate Defender Robert M. Pachak represented him on his PCR appeal. On May 14, 2007, Pachak filed a petition to be relieved as counsel and a *Johnson* petition raising the following issue: Whether defense counsel was ineffective when he was operating under a conflict of interest? (*Johnson* Pet. at 2.) On June 16, 2007, the petitioner filed a pro se petition raising the following issues:

> 1. Was Appellant denied the guaranteed protections of the Federal Constitution's Fourteenth Amendment due process clause when his lawyer plead him guilty without his consent?

3

> 2. Was Appellant's Sixth and Fourteenth Amendment Federal Constitutional Rights to a fair and impartial jury violated when Juror number 61 lied during vior dire?
>
> 3. Did the trial court error in admitting evidence of letters presented by co-defendant as to Appellant's guilt without expert proof letters in fact were Appellant's?
>
> 4. Was Appellant denied due process of law in violation of his Federal Constitutional rights under the Fourteenth Amendment when the trial court refused to charge voluntary manslaughter?

On May 28, 2008, the South Carolina Court of Appeals denied the petitioner a writ of certiorari and granted counsel's petition to be relieved. The remittitur was sent down on June 13, 2008.

In this habeas petition, the petitioner raises the following grounds for relief:

> **GROUND ONE**: Denied 14th Amendment, Right to Fair Trial when the court refused to charge lesser included.
> **SUPPORTING FACTS:** There was ample amount of evidence to support the charge of voluntary manslaughter. In such that the jury could have reasonably believed that there was no malice involved, therefore evidence was ample to support conviction for voluntary manslaughter.
>
> **GROUND TWO:** Ineffective assistance of Counsel.
> **SUPPORTING FACTS:** Counsel failed to provide me with an constitutional guarantee to the effective assistance of trial counsel, and as a result I was denied my First, Sixth and Fourteenth Amendment. I also filed 24 amend IAC claims to my Post Conviction Relief.
>
> **GROUND THREE:** I was denied my Constitutional guarantee to the effective assistance of appellate counsel.
> **SUPPORTING FACTS:** Appellate counsel failed to address meritorious issues and present them to the court. But instead filed frivolous issues along with an Anders Brief.

## **APPLICABLE LAW**

**Summary Judgment Standard**

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

4

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

**EXHAUSTION AND PROCEDURAL BAR**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

6

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (I) there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion.

The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir.

1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

### D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

## DISCUSSION

**Ground One**

In Ground One, the petitioner alleges that the trial court erred by refusing to instruct the jury on the lesser included offense of voluntary manslaughter. The respondent contends that the petitioner was not entitled to a jury instruction on voluntary manslaughter. The undersigned agrees.

A capital defendant has the due process right to receive a lesser-included offense jury instruction "when the evidence unquestionably establishes that the defendant is guilty of a serious, violent offense-but leaves some doubt with respect to an element that would justify conviction of a capital offense. . . ." *Beck v. Alabama,* 447 U.S. 625, 637-38 (1980). "But '[a] defendant is not entitled to have the jury instructed as to lesser degrees of the crime simply because the crime charged is murder.' " *Bates v. Lee*, 308 F.3d 411, 418 (4th Cir. 2002) (internal quotation omitted). Rather, "due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction." *Hopper v. Evans,* 456 U.S. 605, 611 (1982). "The decision of whether there is enough evidence to justify a lesser included offense charge rests within the sound discretion of the trial judge." *Bates*, 308 F.3d at 418 (internal quotation omitted). Furthermore, "[w]here . . . the highest court of a state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law. Accordingly, the circumstances that induce a federal court to overturn the state court determination would need to be extraordinary, indeed." *Id.* (Internal quotation omitted). Such extraordinary circumstances are not present here. Because "federal habeas corpus relief does not lie for errors of state law," the only question here is whether the state court's finding that there was insufficient evidence to support an voluntary manslaughter instruction was so wrong as to amount to a fundamental miscarriage of justice. *Id.*

"Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Cole*, 525 S.E.2d 511 (S.C. 2000). In determining whether voluntary manslaughter should be charged as a lesser offense of murder, the court must view the evidence in the light most favorable to the defendant. The charge need not be given "where it clearly appears that there is no evidence whatsoever

11

tending to reduce the crime from murder to manslaughter." *State v. Pittman,* 647 S.E.2d 144 (S.C. 2007) (internal citation omitted).

The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *State v. Byrd*, 474 S.E.2d 430, 432 (S.C. 1996) (internal quotations omitted).  Although words alone may not constitute sufficient legal provocation, words accompanied by some overt, threatening act may be sufficient.  Even when a person's passion has been sufficiently aroused by a legally adequate provocation, if at the time of the killing those passions had cooled or a sufficiently reasonable time had elapsed so that the passions of the ordinary reasonable person would have cooled, the killing would be murder and not manslaughter.  *State v. Hughey,* 529 S.E.2d 721, 728 (S.C. 2000).

Here, the evidence does not support a voluntary manslaughter charge.  An eyewitness testified that the petitioner shot the victim and the victim and the petitioner were not arguing immediately before the shooting. (App. 190.)  The petitioner did not testify or present any witnesses. (App. 211.) Additionally, the petitioner's defense was that although he was present at the scene, he was not the shooter.  (App. 83; 199-200; 244-246; 252; 341; 346.)  There is no evidence in the record from which an inference can be drawn that there was a struggle or heat of passion killing which would have supported a charge of voluntary manslaughter.  Accordingly, the state court's ruling on this issue was not contrary to, nor an unreasonable application of, federal law.

**Ground Two**

In Ground Two, the petitioner alleges that he received ineffective assistance of counsel because trial counsel "failed to provide me with an constitutional guarantee to the effective assistance of trial counsel, and . . . I also filed 24 amend IAC claims to my Post Conviction Relief." The respondent contends that this ground should be dismissed because the petitioner has merely alleged, in conclusory and general terms that counsel's performance was inadequate, without offering any proof of what, if anything, an adequate representation would have yielded. Further, the respondent contends that only one issue, whether trial counsel had a conflict of interest is not procedurally barred.

The undersigned agrees that the petitioner has made only conclusory allegations in this ground. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir.1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim-or for that matter, on any claim-a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."). Even assuming that the petitioner is attempting to raise all of the grounds he raised below at PCR, only one issue is not procedurally barred. In the PCR order, the court ruled on the petitioner's allegations that trial counsel was ineffective due to a conflict of interest and because he failed to move to strike a juror who was related to the victim. (PCR Order 7-8.) The conflict of interest issue was raised by counsel in the petitioner's *Johnson* petition. (Return Attach. # 9.) The juror issue was raised in the petitioner's pro se memorandum, but not in the context of an ineffective assistance of trial counsel claim. (Return Attach. # 10.) In his pro se *Johnson* petition, the petitioner stated that his sixth and fourteenth amendment rights to a fair and impartial trial were violated when a juror lied and

concealed information during voir dire.    Accordingly, this claim is procedurally barred.[3] *Coleman v. Thompson*, 501 U.S. 722 (1991).   Further, the petitioner has not alleged any cause and prejudice to overcome the procedural default.  As previously discussed, it is the petitioner's burden to raise cause and prejudice or actual innocence and a court need not consider cause and prejudice or actual innocence if not asserted by the petitioner. *Burket v. Angelone,* 208 F.3d 172, 183 n. 10 (4th Cir. 2000).

As to the conflict of interest claim, the undersigned finds this claim is without merit. Before the petitioner's trial began, on the record, trial counsel brought any possible conflict of interest to the trial judge's attention.  He stated that his son had been murdered. He also stated that he had informed the petitioner of that and told him that it would not effect his representation of him. (App. 7-8.)  The trial judge asked the petitioner whether had any problem with trial counsel's continued representation of him and the petitioner responded, "No, sir." (App. 8.)   At the PCR hearing, the petitioner testified that trial counsel had a conflict of interest because his attorney's son was the victim of a murder and the petitioner was on trial for murder. The petitioner testified that he did not think trial counsel did anything intentionally wrong but he felt trial counsel "held back some things he probably could have done farther for me."    (App. 333.)  On cross-examination, he admitted that the trial judge had questioned him about trial counsel's son and that he had responded that he did not have a problem.  (App.   337.)    At the PCR hearing, trial counsel testified that he had

---

[3]In any event, this issue is also without merit.  At the PCR hearing, the petitioner testified that although this juror informed the trial court that she was related to a co-defendant, the juror never let the court know that she was related to the victim. (App. 336.) The juror did not testify at the PCR hearing.  The PCR court held that trial counsel was not ineffective for failing to strike a juror who was related to the victim by marriage. (Return Attach. # 8 - PCR Order at 8-9; App. 336.)   In light of the juror's answers during  voir dire, trial counsel acted appropriately when he concluded there was no reason to question the juror's ability to render a fair and impartial verdict.  Accordingly, the PCR court's ruling on this issue was not contrary to, nor an unreasonable application of, federal law.

discussed any possible conflict regarding his son's murder and his representation with the petitioner before trial. Trial counsel further testified that his son's murder did not affect his representation in the petitioner's case. (App. 343.) The PCR court found that trial counsel's testimony was credible and that the petitioner's testimony was not credible. She held that the petitioner had not established a conflict of interest and the mere possibility of a conflict of interest was insufficient. (App. 359-60.)

The Sixth Amendment guarantees an accused the right to effective assistance of counsel, *see Strickland v. Washington,* 466 U.S. 668, 686 (1984), and an essential aspect of this right is a lawyer "unhindered by conflicts of interest. *Mickens v. Taylor,* 240 F.3d 348, 355 (4th Cir. 2001); *see also Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980). The substance of a conflict of interest claim is analyzed by determining whether there was "an actual conflict of interest [that] adversely affected his attorney's performance." *Mickens*, 535 U.S. at 166, 171-74. This standard is different than the standard applied to a claim for ineffective assistance of counsel. In order to show ineffective assistance of counsel, a claimant generally must demonstrate that his lawyer afforded him defective representation and that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. However, when counsel is burdened by an actual conflict of interest, he "breaches the duty of loyalty, perhaps the most basic of counsel's duties." *Id.* at 692. In this situation, a defendant need not show prejudice due to the inherent seriousness of the breach and the difficulty in "measur[ing] the precise effect on the defense of representation corrupted by conflicting interests." *Id.* Rather, "[p]rejudice is presumed . . . if the defendant demonstrates that counsel 'actively represented conflicting interests' and that an 'actual conflict of interest adversely affected his lawyer's performance.' " *Id*. at 692 (internal quotations omitted).

To obtain relief under this theory, a defendant must demonstrate both (1) an actual conflict of interest-possible or potential conflicts will not satisfy this requirement- and (2) that the conflict significantly affected counsel's performance. *Mickens,* 240 F.3d at 355 (discussing three part test for establishing whether an actual conflict of interest caused and adverse effect). If a defendant establishes both of these two elements, prejudice is presumed. If however, a defendant fails to establish either of these two elements, then the conflict of interest claim necessarily fails. *See Mickens,* 535 U.S. at 170-75; *Beaver v. Thompson,* 93 F.3d 1186, 1192 (4th Cir.1996) ("To prevail on a claim of conflict of interest, [the petitioner] must present convincing evidence of an actual conflict and a resulting adverse effect on performance.") (internal citation omitted).  An adverse effect cannot be presumed solely from the existence of a conflict of interest. *See Mickens,* 535 U.S. at 170-75.  Even assuming the petitioner did not waive any conflict, the petitioner has failed to establish "an actual conflict of interest [that] adversely affected his attorney's performance." *Mickens,* 535 U.S. at 166, 171-74.  Accordingly, this claim is without merit.

**Ground Three**

In Ground Three, the petitioner alleges that appellate counsel was ineffective. Although the petitioner raised this claim in his PCR application, the PCR judge did not address any issues relating to the ineffective assistance of appellate counsel.  Further, the petitioner did not file a Rule 52 or 59 motion and request a ruling on those issues. *Al-Shabazz v. State*, 527 S.E.2d 742, 747 (S.C. 2000)(holding "party must timely file a Rule 59(e), SCRCP, motion to preserve for review any issues not ruled upon by the court in its order.")  Because the PCR judge did not address the issues relating to ineffective assistance of appellate counsel in its order of dismissal, the South Carolina Supreme Court would not have been able to review these issues. *McCullough v. State,* 464 S.E.2d 340, 341 (S.C.1995); *Pruitt v. State,* 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be

16

raised to and ruled on by the PCR judge in order to be preserved for review).[4] Accordingly, this issue is barred from habeas review. *Coleman v. Thompson*, 501 U.S. 722 (1991). Further, the petitioner has not alleged any cause and prejudice to overcome the procedural default. As previously discussed, it is the petitioner's burden to raise cause and prejudice or actual innocence and a court need not consider cause and prejudice or actual innocence if not asserted by the petitioner. *Burket v. Angelone,* 208 F.3d 172, 183 n. 10 (4th Cir. 2000).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#11) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

March 12, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

---

[4] Additionally, the undersigned notes that the petitioner did not raise this in his pro se *Johnson* petition. (Return Attach. # 9.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).